# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KENDRIC MATTHEWS,
     Petitioner,

vs.

WARDEN MICHAEL SHEETS,
     Respondent.

Civil Action No. 1:08-cv-742

Beckwith, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case *pro se* seeking a writ of habeas corpus pursuant

to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1), respondent's return of

writ and exhibits thereto (Doc. 12), and petitioner's response to the return of writ. (Doc. 15).

## I. PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of

Appeals:[1]

> {¶ 2} The record shows that Cincinnati Police Specialist David Hall investigated a
> complaint about drug sales at 658 Hawthorne Street, an apartment rented by Crystal
> Hart. He had received information that Matthews and Hart were selling crack
> cocaine from that location. Hall obtained a warrant to search the apartment.
>
> {¶ 3} Because the warrant was "high risk," Officer John Mercado, an experienced
> SWAT officer who had worked with the narcotics unit for many years, was assigned
> to execute the warrant. He and other officers announced their presence as they used
> a battering ram to force open the door.
>
> {¶ 4} Immediately upon entering the residence, Mercado saw Matthews and Hart in
> the kitchen. Matthews ran towards the bedroom, and Mercado followed. He saw
> that Matthews held a plastic baggie in one hand and a long, dark object in the other.
> Originally, Mercado feared that the long, dark object was a gun, but he later realized
> that it was a remote control.
>
> {¶ 5} The police officers ordered Matthews to stop, but he did not. They overcame
> Matthews and forced him to the ground. His hands automatically went toward his

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

chest and were underneath him when he fell. When the officers lifted him off the floor, they found a crumpled baggie of crack cocaine and the remote control where his hands had rested.

{¶ 6} The baggie contained just under 21 grams of crack cocaine, which Mercado testified was consistent with resale and inconsistent with personal use. Its estimated street value was between $500 and $1000, depending on how it was sold.

{¶ 7} The police subsequently searched the residence. They found (1) an Ohio identification card bearing Matthews's name on a shelf above the kitchen sink; (2) a bag of powder cocaine on top of a hutch; (3) marijuana in the kitchen; (4) a digital scale in the living room; and (4) cash from the pockets of a pair of pants in the living room. Hart told the police that the powder cocaine, the marijuana, and some of the cash belonged to her. She did not admit to possession of the crack cocaine.

(Doc. 12, Exh. 12 at 2-3).

Petitioner was convicted of one count of trafficking in cocaine under Ohio Rev. Code § 2925.03(A)(2)[2] and one count of possession of cocaine under Ohio Rev. Code § 2925.11(A)[3] and sentenced to a total of fourteen years imprisonment. (Doc. 12, Exh. 4).

Petitioner, through counsel, appealed his conviction and sentence to the First District Ohio Court of Appeals. The state appellate court sustained petitioner's assignments of error regarding his sentence, overruled his remaining assignments of error, and remanded the case to the trial court. (Doc. 12, Exhs. 7-12). The State appealed to the Supreme Court of Ohio, which affirmed the judgment of the court of appeals. (Doc. 12, Exhs. 13-15). Petitioner's pro se appeal to the Ohio Supreme Court was denied and dismissed as not involving any substantial constitutional question. (Doc. 12, Exh. 16-18).

---

[2]This section states that no person shall "prepare for shipment . . . prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale. . . ."

[3]This section provides, "No person shall knowingly obtain, possess, or use a controlled substance."

Petitioner filed a pro se application to reopen his direct appeal in the state court of appeals challenging the effectiveness of appellate counsel. The Ohio Court of Appeals denied the application and petitioner's subsequent appeal to the Ohio Supreme Court was dismissed. (Doc. 12, Exhs. 20-24).

Petitioner was resentenced by the trial court and subsequently appealed to the Ohio Court of Appeals. (Doc. 12, Exhs. 25-28, 45-46). As of the date of the return of writ, no further proceedings had transpired.

Petitioner's post-conviction motions were denied by the trial court and dismissed on appeal by the Ohio Court of Appeals and Ohio Supreme Court. (Doc. 12, Exhs. 29-41).

## II. FEDERAL HABEAS CORPUS

Petitioner filed the instant petition for a writ of habeas corpus setting forth the following grounds for relief:

**GROUND ONE:** Petitioner's 6th and 14th amendment rights were violated at trial, which prejudicially deprived the petitioner of his right to a fair trial as guaranteed by the constitution, where the petitioner was prevented from cross-examining an out-of-court declarant; and where the trial court admitted numerous instances of hearsay evidence into the record; thus violating the petitioner's right to confrontation.

**GROUND TWO:** Petitioner's 5th and 14th amendment rights were violated at trial, as a result of prosecutorial misconduct for failing to disclose a "statement" that the petitioner made to police, that the prosecutor was required to disclose in discovery, which prejudiced the petitioner from having a fair trial as guaranteed by the due process clauses of the 5th and 14th amendments to the United States Constitution.

**GROUND THREE:** Petitioner's 6th and 14th amendment rights at trial were violated as a result of trial counsel's deficient representation, which prejudicially prevented the petitioner from obtaining a fair trial, as guaranteed by the 6th and 14th amendments to the United States Constitution.

**GROUND FOUR:** Petitioner's convictions for possession and trafficking in cocaine are against the manifest weight of the evidence and violate the due process clause of

the 14th amendment to the United States Constitution.

**GROUND FIVE:** Petitioner's 6th and 14th amendment rights to a fast and speedy trial were violated when defense counsel waived the petitioner's statutory right to a speedy trial under Ohio Rev. Code Sec. 2945.71, without giving notice to the petitioner.

**GROUND SIX:** Petitioner's 6th and 14th amendment rights to the effective assistance of counsel on direct appeal were violated as a result of appellate counsel's failure to raise two additional and prejudicial issues on direct appeal; and where the State court of appeals misconstrued Ohio law under appellate rule 26(B).

(Doc. 1).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

4

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005); *see also Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers "the totality of the evidence-'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s]*.'" *Wiggins*, 539 U.S. at 536 (emphasis in the original) (quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)). *Accord Clinkscale*, 375 F.3d at 436.

## III. THE OHIO COURT OF APPEALS UNREASONABLY APPLIED CLEARLY ESTABLISHED FEDERAL LAW IN DENYING PETITIONER'S CONFRONTATION CLAUSE CLAIM, BUT THE ERROR WAS HARMLESS.

Ground One of the petition asserts that petitioner's confrontation rights under the Sixth Amendment were violated when the trial court permitted the state to introduce hearsay statements of a confidential informant that petitioner was selling drugs out of the Hawthorne Avenue apartment. Police officers testified that they began their investigation after receiving a complaint of drug sales

5

from the apartment.

The Ohio Court of Appeals rejected petitioner's confrontation clause assignment of error as follows:

## II. Confrontation Clause

{¶ 8} Matthews presents nine assignments of error for review. In his first assignment of error, he contends that the trial court's admission of hearsay evidence violated his right to confront the witnesses against him. He argues that the police officers should not have been allowed to testify that they had received complaints of drug activity at the Hawthorne Street apartment and that Hart and Matthews's names had surfaced in connection with that activity. This assignment of error is not well taken.

{¶9} The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In *Crawford v. Washington*,[1] the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[2]

> FN1. (2004), 541 U.S. 36, 124 S.Ct. 1354.
>
> FN2. *Id.* at 53-54; *State v. Robinson*, 1st Dist. No. C-060434, 2007-Ohio-2388, ¶ 12.

{¶ 10} The Court distinguished between testimonial and nontestimonial hearsay and held that only testimonial statements implicate the Confrontation Clause.[3] Further, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.[4] Courts have permitted the introduction of testimonial statements where the testimony provided background information or context for the investigation, or explained a detective's conduct while investigating a crime.[5]

> FN3. *Crawford*, supra, at 68; *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15-16; *Robinson*, supra, at ¶ 13.
>
> FN4. *State v. Lewis*, 1st Dist. Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶ 41; *State v. Jordan*, 167 Ohio App.3d 157, 2006-Ohio-2759, 854 N.E.2d 520, ¶ 47.
>
> FN5. *Lewis*, supra, at ¶ 41.

{¶ 11} In this case, the hearsay statements were not admitted for their truth, but to show why the police officers had obtained and executed a search warrant for that particular address. This case differs substantially from cases where we have held that the admission of hearsay statements into evidence violated the Confrontation Clause. In those cases, the statements did not merely serve to explain how certain milestones in the investigation came to pass, but essentially constituted ex parte examinations that went to the heart of the state's case.[6]

> FN6. *Robinson,* supra, at ¶ 14-15; *Lewis,* supra, at ¶ 42-44.

{¶ 12} Here, whether informants had told the police that Matthews and Hart were involved in prior drug activity at the apartment did not go to the heart of the state's case. No matter what the informants had said, the basis of Matthews's convictions was that police officers had caught him with a baggie of crack cocaine during the execution of a valid search warrant. Consequently, the introduction of the hearsay statements into evidence did not violate the Confrontation Clause.

{¶ 13} Further, even if the trial court had erred in admitting the statements into evidence, a constitutional violation can be harmless error if it did not, beyond a reasonable doubt, contribute to the conviction.[7] Again, Mercado testified that he saw a baggie of what appeared to be crack cocaine in Matthews's hand as he ran from the police. Other officers testified how a baggie of crack cocaine was found underneath Matthews where he had fallen to the ground. The officers also found other indicia of drug activity in the apartment as they executed the warrant. Under the circumstances, we hold that the admission of the alleged hearsay statements did not contribute to Matthews's convictions and, therefore, that any error was harmless. We overrule Matthews's first assignment of error.

> FN7. *Robinson,* supra, at ¶ 16.

(Doc. 12, Exh. 12 at 3-5).

A defendant in a criminal trial has the right to confront the witnesses called against him. U.S. Const. amend. VI. The Confrontation Clause of the Sixth Amendment secures the right of a defendant to cross-examine an adverse witness for the purpose of uncovering possible biases and exposing the witness's motivation for testifying. *See Davis v. Alaska,* 415 U.S. 308, 316-317 (1974). Because cross-examination is "the most effective method by which a defendant can test the

truth of testimony given against him," *Stevens v. Bordenkircher,* 746 F.2d 342, 346 (6th Cir. 1984), the right of confrontation and cross-examination is considered "an essential and fundamental requirement" for a fair trial. *Barber v. Page,* 390 U.S. 719, 721 (1968) (quoting *Pointer v. Texas,* 380 U.S. 400, 405 (1965)). *See also Kentucky v. Stincer,* 482 U.S. 730, 739 (1987).

The admission of hearsay statements by a declarant not present or otherwise available for cross-examination at trial may trigger concerns of a possible violation of the defendant's right under the Sixth Amendment's Confrontation Clause to confront and cross-examine the witnesses against him. *See Crawford v. Washington,* 541 U.S. 36, 50-60 (2004). In *Crawford,* the United States Supreme Court held that testimonial out-of-court statements offered against the defendant to establish the truth of the matter asserted are not admissible where the defendant had no opportunity (either before or during trial) to cross-examine the witness, regardless of the reliability of the admitted statements. *Crawford,* 541 U.S. at 68-69 (abrogating *Ohio v. Roberts,* 448 U.S. 56 (1980)). The Supreme Court stated, "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.

The Confrontation Clause does not apply to non-testimonial statements. *See Davis v. Washington,* 547 U.S. 813, 823-26 (2006). *See also Whorton v. Bockting,* 549 U.S. 406, 420 (2007) ("[T]he Confrontation Clause has no application" to "out-of-court nontestimonial statement[s]."). The Supreme Court in *Crawford* stated that the Confrontation Clause is concerned with "testimony," which "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," and noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an

acquaintance does not." 541 U.S. at 51(internal quotation marks omitted). Thus, the introduction of

non-testimonial statements at trial does not implicate Confrontation Clause concerns.

While the *Crawford* Court did not define "testimonial," it did provide some guidance on the

types of "testimonial" statements subject to the Confrontation Clause:

> [1] *ex parte* in-court testimony or its functional equivalent-that is, material such as
> affidavits, custodial examinations, prior testimony that the defendant was unable to
> cross-examine, or similar pretrial statements that declarants would reasonably expect
> to be used prosecutorially; [2] extrajudicial statements contained in formalized
> testimonial materials, such as affidavits, depositions, prior testimony, or confessions;
> [and][3] statements that were made under circumstances which would lead an
> objective witness reasonably to believe that the statement would be available for use
> at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). In determining whether a statement is

testimonial for evidentiary purposes, the Court must determine if "a reasonable person in the

declarant's position would anticipate his statement being used against the accused in investigating

and prosecuting the crime." *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004).

In addition, "[t]he [Confrontation] Clause ... does not bar the use of testimonial statements

for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59, n. 9.

Thus, the "admission of a testimonial statement in and of itself is not enough to trigger a violation

of the Confrontation Clause. Instead, the statement must be used as hearsay–in other words, it must

be offered for the truth of the matter asserted." *United States v. Pugh,* 405 F.3d 390, 399 (6th Cir.

2005) (citing *Cromer,* 389 F.3d at 676). Therefore, to prevail on his Confrontation Clause claim

stemming from the admission of the police officers' testimony concerning information learned from

undisclosed sources, petitioner must show that those statements were "testimonial in nature" and

were offered as hearsay to prove the truth of the matter asserted and not for some other purpose.

*See id.*

Here, petitioner challenges the testimony of three police officers as violating his rights under the Confrontation Clause. (Doc. 1 at 7-8). Each officer testified about receiving information or a complaint about drug activity at the Hawthorne Avenue apartment from an unnamed source or confidential informant. "[S]tatements of a confidential informant are testimonial in nature and therefore may not be offered by the government to establish the guilt of an accused absent an opportunity for the accused to cross-examine the informant." *Cromer*, 389 F.3d at 670-71. Since statements by a confidential informant are considered "testimonial" for purposes of the Confrontation Clause, the only issue for this Court is whether such statements constitute hearsay, *i.e.*, whether the statements were offered for their truth, or were offered for some other purpose. In this regard, the Sixth Circuit's decision in *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004), is instructive.

In *Cromer*, a police officer testified that she received information from a confidential informant about the sale of drugs from a particular residence. The officer also testified that she received information that the defendant had been associated with illegal activities at the residence and that a person physically resembling the defendant had been involved in the drug transactions. *See* 389 F.3d at 675-77. To the extent the officer's testimony merely "alluded" to the confidential informant's statements for background information to explain "how certain events came to pass or why the officers took the actions they did" in searching the residence, they were not offered to establish the truth of the matter asserted and did not violate the Confrontation Clause. *Id.* at 676. However, statements that conveyed information identifying the defendant as a person associated with the residence under investigation for drug activity were not offered as background testimony, but rather for the purpose of establishing the truth of the matter asserted:  that the defendant had in

fact been involved in illegal drug activity. *Id.* at 676-77. The out-of-court statements implicating the defendant in criminal activity went to the very heart of the government's case and thus violated the Confrontation Clause. *Id.* *See also United States v. Hearn*, 500 F.3d 479, 483-84 (6th Cir. 2007) (admission of confidential informant statements violated right of confrontation where witness testified with unnecessary detail and "[t]he excessive detail occurred twice, was apparently anticipated, and was explicitly relied upon by the prosecutor in closing arguments."); *United States v. Powers*, 500 F.3d 500, 509 (6th Cir. 2007) (confidential informant's identification of vehicle belonging to defendant violated Confrontation Clause); *cf. United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) (no confrontation problem where challenged statement admitted solely to provide background information and mentioned only briefly in officer's testimony); *United States v. Gibbs*, 506 F.3d 479, 486-87 (6th Cir. 2007) (finding no *Crawford* violation because the challenged testimony "[d]id not bear on" any element of the charges against the defendant, and "a review of the record reveals that [the purportedly hearsay aspect of the testimony] was a miniscule part of [the witness's] overall testimony").

The first officer to testify was Mark Bemmes. Officer Bemmes testified:

> A. As a unit, we had a complaint on an address at 658 Hawthorne Avenue involving,
> through the investigation, we learned it to be Crystal Hart and Kendric --
>     MR. LEVY: Objection.
>     THE COURT: Overruled.
> A. -- and Kendric Matthews. We developed a search warrant for that address based
> on our investigation.
> Q. What did you do then?
> A. Just along with my unit, we executed the search warrant. SWAT did the entry, but
> then we did the search.

(Exh. 12, Tr. 176).

Officer Bemmes did not testify on the substance of the "complaint" received, but rather that

upon receiving some undisclosed information by way of the complaint the police obtained a search warrant. The statements were background information that explained why an investigation was initiated by the police and the action taken in response to the complaint. "[T]estimony provided merely by way of background, or to explain simply why the Government commenced an investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment rights." *U.S. v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007) (internal quotation omitted). Since Officer Bemmes' testimony regarding the complaint provided only general background information and an explanation as to why the investigation proceeded as it did, the testimony does not constitute hearsay and did not violate the Confrontation Clause.

The second officer to testify was Scott Bode. Officer Bode testified:

> But at the heart of violent crime, we've come to find out, is a lot of drug dealings and drug activity. It was brought to our attention that both the defendant and the codefendant, Ms. Hart, by name, was brought to our attention --
>> MR. LEVY: Objection.
>> THE COURT: Overruled.
> Q. Continue, please.
> A. It was brought to our attention they were involved in selling drugs out of a location on Hawthorne Avenue.

(Exh. 12, Tr. 198).

Officer David Hall testified next:

> A. I was investigating a complaint of drug sales at 658 Hawthorne Avenue on a second floor of that location. The complaint came in that there was a female by the name of Crystal. And in addition to that --
>> MR. LEVY: Object. It's hearsay.
>> THE COURT: It's not admitted for the truth, it's just admitted to give us background of why he was interested in it. Go ahead. Overruled.
> A. In addition, this defendant here, were involved in drug transactions.
> Q. This defendant, being whom?
> A. Kendric Matthews.
> Q. Okay. Go ahead.

A. And more specifically, it was crack sales from that location.

(Doc. 12, Tr. 210-11).[4]

Petitioner argues that the testimony of Officers Bode and Hall contained testimonial hearsay that was used to identify petitioner as the person selling drugs from the Hawthorne Avenue location and that petitioner had no opportunity to cross-examine the confidential informant.

The Court agrees that the confidential informant's statement that petitioner was selling drugs at the Hawthorne Avenue apartment is testimonial because a reasonable person in the informant's position would anticipate his statement being used against petitioner in investigating and prosecuting a crime. *Cromer*, 389 F.3d at 675. In addition, the statements were not offered merely for background information to show why the officers took certain actions. Rather, they were offered to show that petitioner was the individual selling drugs at the apartment. The Court's conclusion that the statements were admitted for the truth of the matter asserted is bolstered by the prosecutor's closing argument:

> Ladies and gentlemen, you can consider why the police were there on Hawthorne Avenue back on March 15th, what the basis of that search warrant is. You should *consider why they broke down that door, and why they breached that door. And they told you it was because Kendric Matthews was selling crack out of that residence, that their investigation led them to have that information.* You can consider that.

---

[4]Petitioner also takes issue with the following testimony of Officer Hall:

Q. What, if anything, tied defendant Kendric Matthews to the location of 658 Hawthorne Avenue, Apartment 2?
A. My preliminary investigation that I had done that led up to the probable cause in doing the search warrant. His nickname was also brought into my investigation, which I've had previous encounters with Mr. Matthews --
      MR. LEVY: I'm going to object.
A. -- knew him by the --
      THE COURT: Hold on. Sustained. Next question.

(Doc. 12, Tr. 215). As the transcript shows, the trial court sustained petitioner's objection and later instructed the jury to disregard any testimony to which an objection was sustained. (Tr. 320-21). The jury is presumed to follow the instructions of the Court in the absence of evidence to the contrary. *See Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987). Therefore, the Court finds no Confrontation Clause violation with respect to this testimony of Officer Hall.

> And the police officers told you they knew he was staying there, they knew he was in there, in that area. Their investigation led them to that area, for Kendric Matthews.

(Doc. 12, Tr. 307-308) (emphasis added).

> They investigate based on complaints of drug trafficking that the defendant was tied to. And based on that, they caught him. They caught him, literally, red-handed.

(Doc. 12, Tr. 317). By reminding the jurors that the officers obtained a search warrant based on information that petitioner was selling crack cocaine at the Hawthorne Avenue apartment, the statements went beyond setting the scene or explaining the officers' actions and went to show that petitioner was involved in the sale of drugs. *See Hearn*, 500 F.3d at 484. Had the jury simply been told that police received a tip concerning "some illegal activity" at the Hawthorne Avenue residence, they would have been provided with the background and context of the officers' actions without identifying petitioner as the individual selling drugs from the apartment. *Id. See also Cromer*, 389 F.3d at 677-78. The details about petitioner's identity, his connection to the apartment, and his involvement in drug transactions at the apartment were not necessary to explain why police behaved in the manner they did. The informant who provided this information to police officers was not subject to cross-examination and, therefore, the admission of the statements violated petitioner's rights under the Confrontation Clause. Therefore, the Court finds the Ohio Court of Appeals' decision was an unreasonable application of *Crawford*.

Nevertheless, such error is harmless because petitioner's conviction does not depend on the confidential informant's identification of petitioner as the seller of drugs. "Confrontation Clause errors are subject to harmless-error analysis." *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). Petitioner is not entitled to habeas corpus relief unless the error "had substantial and injurious effect

or influence in determining the jury's verdict." *Fry v. Pliler,* 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 631 (1993)). In determining the effect of the constitutional error under *Brecht,* the Court must consider the effect of the improperly admitted evidence and the overall weight of the evidence presented at trial. *See Brecht,* 507 U.S. at 639. The conviction must stand if upon review of the entire record the Court is convinced that "the error did not influence the jury or had but slight effect." *O'Neal v. McAninch,* 513 U.S. 432, 435-38 (1995); *Kotteakos v. United States,* 328 U.S. 750, 774 (1946). On the other hand, if there is "grave doubt" as to whether the constitutional error had such an effect "that error is not harmless." *O'Neal,* 513 U.S. at 436. "Grave doubt" means "that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435. The Court considers factors such as the importance of the testimony to the prosecutions' case, whether the testimony was cumulative of other evidence, the presence or absence of evidence corroborating or contradicting the testimony, the opportunity for effective cross-examination, and the strength of the prosecution's other evidence. *See Vasquez,* 496 F.3d at 576-78 (citing *Deleware v. Van Arsdall,* 475 U.S. 673, 684 (1986)).

In this case, the hearsay statements had little or no impact on the jury's verdict given the strength of the direct and circumstantial evidence against petitioner. When the police entered the apartment, petitioner and his co-defendant were sitting at a table in a kitchen/dining room area. (Doc. 12, Tr. 138, 160). Petitioner then ran from the officers with a plastic bag in one hand and a remote control in the other. (Doc. 12, Tr. 136, 145). After he was taken down to the ground by the officers, a crumpled and wrinkled bag of crack cocaine was recovered from underneath petitioner's body where his hands had rested. (Id., Tr. 136-37, 140). The amount of crack cocaine recovered

15

was consistent with an amount for distribution or resale and not personal use. (Id., Tr. 141-42, 204). Officers also recovered money in a pant's pocket and a digital scale in the living room. (Tr. 200-202). The street value of the 21 grams of crack cocaine recovered was between $500 and $1000 depending on whether it would be sold as a whole, individually, or by weight in grams. (Tr. 203-204). An Ohio identification card bearing petitioner's name was found on a shelf above the kitchen sink. (Tr. 215, 222). Petitioner's co-defendant told police that the marijuana and powder cocaine found in the kitchen and the money found in the closet were hers, but she did not admit to possession of the crack cocaine. (Tr. 205). Petitioner was literally caught holding the bag of crack cocaine when police entered the apartment. This evidence, coupled with the evidence of a quantity of illegal drugs recovered in excess of an amount for personal use, the presence of a digital scale, and sums of cash permit a reasonable inference that petitioner was preparing drugs for shipment or distribution for the purpose resale. *See, e.g., State v. Kutsar*, No. 89310, 2007 WL 4534589, at *3 (Ohio App. 8th Dist. Dec. 27, 2007) (and cases cited therein); *State v. Owens,* No. 23267, 2007 WL 57598, at *7 (Ohio App. 9th Dist. Jan. 10, 2007); *State v. Williams,* No. C-040747, 2005 WL 3484652, at *4 (Ohio App. 1st Dist. Dec. 16, 2005). There was physical evidence linking petitioner to the possession and trafficking charges so the witness testimony at issue was not crucial to a conviction and merely cumulative of other evidence presented. *Cf. Vasquez*, 496 F.3d at 576, 578. Given the significant evidence of guilt presented at trial, the Court concludes that any error in admitting the hearsay statements did not have a substantial and injurious effect on the jury's verdict. Accordingly, the Court concludes that Ground One of the petition should be denied.

## IV. GROUND TWO OF THE PETITION RELATING TO THE WITHHOLDING OF INCULPATORY EVIDENCE DURING PRETRIAL DISCOVERY IS WITHOUT MERIT.

Ground Two alleges a claim of prosecutorial misconduct based on the prosecutor's failure during pretrial discovery to disclose a statement petitioner made to police shortly after his arrest. Petitioner asked the police to contact someone to care for his puppies found in the apartment. Petitioner contends this statement decimated his defense that he had no connection to the Hawthorne Avenue apartment other than his presence at the time of the raid. (Doc. 1 at 15). This statement was not disclosed during discovery as required under Ohio Crim. Rule 16(B) and was revealed on the first day of trial during the testimony of Officer Hall. Petitioner alleges that the failure to timely disclose this statement during discovery deprived him of a fair trial as guaranteed by the Due Process Clause. Petitioner also asserts that had this statement been properly disclosed during discovery, he could have challenged its admissibility through a motion to suppress. In addition, petitioner contends the withholding of this evidence violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. 1 at 18). Lastly, petitioner asserts that had he "been aware of this inculpatory statement, he may have likely chosen a different trial strategy, or even accepted the 2 year plea offer that was presented to him before trial." (Doc. 1 at 15).

The Ohio Court of Appeals addressed this assignment of error as follows:

{¶14} In his second assignment of error, Matthews contends that the trial court erred by failing to grant a mistrial when a police officer testified to a statement he had made that the state had failed to disclose in discovery. He argues that the evidence regarding the statement was unduly prejudicial and denied him a fair trial. This assignment of error is not well taken.

{¶15} In response to a specific question from the state, Officer Hall testified that "[t]here were a couple of puppies in the kitchen area, next to the bathroom. * * * Mr. Matthews * * * was concerned about having somebody take care of those dogs for him. And so we made some phone calls to have somebody come, we attempted to

have somebody come and take those dogs for Mr. Matthews." Matthews's counsel objected, stating that it was the first time he had heard about the statement. The trial court agreed that the state should have disclosed the statement. It overruled Matthews's motion for a mistrial, but it granted his motion to strike the testimony and instructed the jury that "any reference to the dogs is to be disregarded."

{¶16} The state should have disclosed the statement under Crim. R. 16(B)(1)(a)(ii), which requires disclosure of any oral statement made by the defendant to any law enforcement officer. But the trial court has broad discretion in regulating discovery and in determining the appropriate sanction for a discovery violation. The court must inquire into the circumstances surrounding the discovery violation and impose the least severe sanction consistent with the purpose of the rules of discovery.

{¶17} Further the decision whether to grant a mistrial lies within the court's discretion. A trial court should not order a mistrial merely because an error or irregularity has occurred, unless it affects the defendant's substantial rights. The court should declare a mistrial "only when the ends of justice so require and when a fair trial is no longer possible."

{¶18} Nothing in the record shows that Matthews was unduly prejudiced by the state's failure to disclose the statement. Matthews did not contend that he had never been in the apartment before. More importantly, the court excluded evidence about the statement and instructed the jury to disregard it. We must presume that the jury followed the court's instruction. Under the circumstances, we cannot hold that the trial court's decision to deny Matthews's motion for a mistrial was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. We overrule Matthews's second assignment of error.

{¶19} In his third assignment of error, Matthews contends that the state committed prosecutorial misconduct by withholding the statement and failing to comply with the discovery rules. The conduct of the prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. As we have previously stated, the failure to disclose the statement did not unduly prejudice Matthews or deny him a fair trial, particularly given that the trial court excluded evidence about the statement. Further, we cannot hold that any of the prosecutor's remarks during argument prejudicially affected Matthews's substantial rights. Consequently, we overrule Matthews's third assignment of error.

(Doc. 12, Exh. 12 at 5-7) (footnotes omitted).

To the extent petitioner argues the violation of Ohio Crim. R. 16(B) justifies habeas corpus relief, his contention is without merit because this Court is without jurisdiction to review issues of state law on federal habeas corpus review. This Court may grant a writ of habeas corpus only if

petitioner, pursuant to the judgment of a State court, "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal courts may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866 (1988). *See also Hicks v. Collins*, 384 F.3d 204, 220 (6th Cir. 2004) (alleged violation of Ohio Criminal Rule 16(B)(1)(a)(ii) not cognizable on habeas review). Therefore, this Court may not review whether the State violated Rule 16(B) by its failure to disclose petitioner's oral statement during pretrial discovery.

The Court determines that the Ohio Court of Appeals did not violate clearly established federal law by overruling petitioner's assignments of error on the discovery issue. It is well established that there "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). While the Due Process Clause requires the prosecution to disclose evidence *favorable* to an accused upon request where the evidence is material either to guilt or to punishment, *Brady v. Maryland*, 373 U.S. 83 (1963), the statement about petitioner's concern for his dogs was inculpatory, not exculpatory. *See United States v. Henry*, 71 Fed. Appx. 493, 502 (6th Cir. 2003) (*Brady* is concerned with exculpatory evidence, *i.e.*, evidence favorable to defendant). *See also Lawson v. Jackson*, No. C-1-02-17, 2005 WL 1406101, at *7 (S.D. Ohio June 15, 2005) (citing *United States v. Simpson*, 901 F.2d 1223, 1228 (5th Cir. 1990); *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir. 1988)). Since the evidence about the puppies tended to inculpate petitioner and was neither facially exculpatory nor impeaching, the prosecution's failure to disclose this statement during pretrial discovery does not violate *Brady*. In addition, since petitioner personally made the statement about his dogs, he knew

19

of the existence of the statement and could have advised his counsel accordingly. *Hicks*, 384 F.3d at

220-21. "[T]here is no *Brady* violation if the defendant knew or should have known the essential

facts permitting him to take advantage of the information in question. . . ." *Carter v. Bell*, 218 F.3d

581, 601 (6th Cir. 2000). Therefore, petitioner has no viable *Brady* claim under the facts of this

case.

Petitioner's assertion that the withholding of this statement precluded a pretrial motion to

suppress based on *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (Doc. 1 at 18) is also without

merit. There is no evidence that petitioner's statement was made in response to interrogation by

police officers or was anything more than a spontaneous, voluntary statement expressing concern

for the welfare of his dogs. *See United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997)

"[W]here a defendant makes a voluntary statement without being questioned or pressured by an

interrogator, his statements are admissible despite the absence of *Miranda* warnings." *Id. See also

Tolliver v. Sheets*, 530 F. Supp.2d 957, 993 (S.D. Ohio 2008). In any event, the evidence was

ultimately ruled inadmissible by the trial court and could not be used by the State in proving its case

against petitioner.

Nor was petitioner denied a fair trial by the prosecutor's conduct. Petitioner has not

demonstrated that the prosecutor's handling of discovery constituted prosecutorial misconduct. To

prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the

prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a

denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). A prosecutor's

alleged misconduct must be examined within the context of the entire trial to determine whether it

deprived a defendant of a fair trial. *United States v. Young*, 470 U.S. 1, 11-12 (1985). "Reversal is

required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).[5] Federal habeas relief may not be granted unless such error "had a substantial and injurious effect or influence in determining the jury's verdict." *See Calderon v. Coleman*, 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), in turn quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

As indicated, petitioner's objection to the statement about his dogs was sustained by the trial judge who instructed the jury to disregard it. (Doc. 12, Tr. 222). The Court presumes the jury followed the trial court's instruction to disregard the statement. *See Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."). *See also Hill v. Mitchell*, 400 F.3d 308, 325 (6th Cir. 2005); *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000). There is no indication from the record that the jury was incapable of following this instruction or that the statement was "devastating" to petitioner's defense. As the Ohio Court of Appeals noted, petitioner was not claiming he had never been to the apartment before the date of the raid. (Doc. 12, Exh. 12

---

[5]The Court may consider factors such as:(1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden v. Wainwright*, 477 U.S. 168, 182 (1986), and *Young*, 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly*, 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden*, 477 U.S. at 182, and *Berger v. United States*, 295 U.S. 78, 84-85 (1935); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden*, 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-83 & n.14, and *Young*, 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden*, 477 U.S. at 182.

at 7 and Tr. 218). The statement about the dogs was isolated and, in view of the other evidence presented against petitioner, did not have a substantial injurious effect on the jury's verdict or deprive petitioner of a fair trial.

Finally, petitioner's assertion that had he "been aware of this inculpatory statement, he may have likely chosen a different trial strategy, or even accepted the 2 year plea offer that was presented to him before trial" (Doc. 1 at 15) is speculative. Petitioner has not offered any explanation on how the tardy disclosure of this evidence affected his trial preparation or his decision to plead or proceed to trial. His conclusory assertion about what he "may have likely" done had he known of the statement is insufficient to warrant habeas relief in this case.

Therefore, Ground Two of the petition should be denied.

## V. PETITIONER'S INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL CLAIMS RAISED IN GROUNDS THREE AND SIX OF THE PETITION ARE WITHOUT MERIT AND SHOULD BE DENIED.

Petitioner asserts trial counsel was ineffective because he: (1) failed to challenge the search warrant based on a mistaken belief that petitioner had no standing to challenge the search; (2) failed to meet with petitioner and showed a lack of interest in his case; (3) failed to review Officer Hart's grand jury testimony and have it sealed for the court's review; (4) failed to call petitioner's co-defendant as a witness; (5) waived time for purposes of the state speedy trial statute without petitioner's consent; (6) withdrew pretrial motions; and (7) failed to object to petitioner's appearance at trial in prison garb. The first six allegations were raised on direct appeal to the Ohio Court of Appeals, while the seventh was not. (Doc. 12, Exh. 10 at 12).

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must

show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show the alleged errors had more than "some conceivable" effect on the outcome of the proceedings. *Id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id.* at 695; *see also Willis v. Smith,* 351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000).

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Strickland,* 466 U.S. at 697.

The Ohio Court of Appeals determined that counsel was not deficient in his representation and that petitioner's defense was not prejudiced by counsel's performance:

> {¶ 20} In his fifth assignment of error, Matthews contends that he was denied the effective assistance of counsel. He has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the results of the proceeding would have been otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel.[18] To the contrary, our review of the record shows that Matthews's counsel put on a thorough and well-planned defense. A defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic.[19] Consequently, we overrule his fifth assignment of error.
>
> > FN18. *Strickland v. Washington* (1984), 466 U.S. 668, 687-689, 104 S.Ct. 2052; *State v. Hirsch* (1998), 129 Ohio App.3d 294, 314-315, 717 N.E.2d 789.
> >
> > FN19. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523; *State v. Burrell,* 1st Dist. No. C030803, 2005-Ohio-34, ¶ 30.

(Doc. 12, Exh. 12 at 8).

The Ohio Court of Appeals correctly cited and applied the two-part standard of review established in *Strickland* for evaluating ineffective assistance of counsel claims. As the Ohio Court of Appeals reasonably determined, counsel's challenged conduct did not fall below an objective standard of reasonableness and did not prejudice petitioner's defense under the applicable two-part *Strickland* standard.

Even assuming petitioner had standing to challenge the search warrant, petitioner fails to explain the legal justification for suppressing the evidence resulting from the search. Nor does he allege facts or present evidence demonstrating how additional meetings with counsel would have been helpful to his defense, *see Hill v. Mitchell*, 400 F.3d 308, 325 (6th Cir.), *cert. denied*, 546 U.S. 1039 (2005), or what evidence he hoped to obtain through the grand jury testimony of Officer Hart. "[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir. 2002) (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) and *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir.), *cert. denied*, 537 U.S. 1004 (2002), and *cert. denied*, 539 U.S. 938, 944 (2003)). Other than these general assertions, petitioner has failed to present any evidence or argument showing how counsel's alleged failure in these regards would have resulted in evidence tending to exculpate him or assist in his defense in order to demonstrate a "reasonable probability" of a different outcome.

Nor does petitioner demonstrate that his pre-trial motions were likely to be successful or change the result of his trial had counsel not withdrawn them. In the absence of any demonstration of how these motions would have aided his defense, it was reasonable for the Ohio court to conclude that petitioner had not established a basis for this part of his ineffective assistance of counsel claim.

Petitioner also fails to demonstrate that counsel "failed to call Crystal Hart as a witness in front of the jury." (Doc. 1 at 19). Contrary to petitioner's assertion, trial counsel in fact called petitioner's co-defendant Ms. Hart as a witness. However, on advice of counsel, Ms. Hart invoked

25

her Fifth Amendment right against self-incrimination and refused to testify. (Doc. 12, Tr. 270-274). Even if petitioner is arguing that Ms. Hart should have been forced to invoke her Fifth Amendment right in the jury's presence, it is not clear what petitioner sought to gain by this act. Whether the jury would have inferred that Ms. Hart was "guilty" by invoking her Fifth Amendment privilege against self-incrimination, an improper inference in any event, *see United States v. Ballard*, 280 Fed. Appx. 468,470 (6th Cir. 2008) (and cases cited therein), that inference would have no bearing on whether petitioner was also involved in the crimes charged. *See State v. McCullar*, No. 19372, 2003 WL 22429398, at *3 (Ohio App. 2d Dist. Oct. 23, 2003).

In addition, petitioner complains that counsel executed numerous waivers of his speedy trial rights without his consent. However, under Ohio law "a defendant is bound by his counsel's waiver of speedy trial rights, even though the waiver might have been executed without his consent." *State v. Taylor*, 98 Ohio St.3d 27, 32, 781 N.E.2d 72, 78 (2002) (citing *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593, syllabus (1978)). Thus, petitioner's consent was not necessary before his trial counsel could exercise waivers of petitioner's speedy trial rights and petitioner was bound by such waivers.

Finally, petitioner's contention that trial counsel failed to object to his prison garb was not presented to the Ohio courts on direct review. Petitioner has thus procedurally defaulted this claim. *See Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied*, 546 U.S. 821 (2005) (citing *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994)). By failing to raise this claim on direct review, petitioner has waived the claim for purposes of habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*,

501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

As cause for the procedural default, petitioner asserts the ineffective assistance of appellate counsel for failing to raised the prison garb claim on direct appeal. This claim is also raised as an independent claim for relief in Ground Six of the petition. Nevertheless, petitioner fails to demonstrate he suffered any prejudice as a result of his appearing at trial in prison garb.

While a state "cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes," a defendant may waive any objection to being tried in prison garb by failing to object at trial. *Estelle v. Williams*, 425 U.S. 501, 512 (1976). "[T]he failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512-13. *See also United States v. Garcia*, 259 Fed. Appx. 747, 753 (6th Cir. 2008) ("it is uncontested that the defendant made no objection and, therefore, there is no constitutional violation"). The decision to appear in prison garb may be a matter of trial strategy or tactic which "rests with the accused and his attorney." *Estelle*, 425 U.S. at 512. Indeed, "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id.* at 508.

Here, petitioner argues trial counsel was ineffective because he failed to object to petitioner's prison garb at trial and appellate counsel was ineffective in failing to raise this claim on direct appeal. Petitioner's ineffective assistance of trial and appellate counsel claims are without merit because petitioner has not demonstrated a reasonable likelihood the jury would have returned

27

a verdict of acquittal had he not been dressed in prison clothing. Petitioner was literally caught holding a bag of crack cocaine in a quantity suggesting more than personal use and with a high resale value. In addition, officers recovered a digital scale and cash in the raid. There does not appear to be a reasonable probability the jury would have returned a different verdict had petitioner been dressed in civilian clothing given the strong evidence against him. *See Hill v. Mitchell*, 400 F.3d at 320-321 (petitioner not entitled to habeas relief based on ineffective assistance of counsel claim where he appeared at trial in prison garb where evidence of guilt was strong and where petitioner failed to show prejudice). *See also Whitman v. Bartow*, 434 F.3d 968, 972 (7th Cir.) (rejecting an ineffective assistance of counsel claim, finding that petitioner had not shown prejudice even where counsel lacked a tactical reason for allowing petitioner to appear in jail clothes and took no steps to secure civilian clothing, because "[t]he evidence of Whitman's guilt was overwhelming, and his attire was not an outcome determinative factor in the jury's decision."), *cert. denied*, 547 U.S. 1199 (2006). In light of the strong evidence against petitioner, there is no reasonable likelihood that the jury would have returned a more favorable verdict even if petitioner had been dressed in civilian clothing.

Petitioner raises two other claims in connection with his ineffective assistance of appellate counsel claim in Ground Six of the petition: that appellate counsel failed to expand the record on appeal "for purposes of establishing a 'record' of the prison garb claim" and failed to remove petitioner's appeal from the accelerated calendar of the state court of appeals. (Doc. 1 at 29, 34). Neither claim merits habeas relief in this case.

Since petitioner fails to establish he suffered prejudice as a result of appellate counsel's omission of a prison garb claim of error on appeal, counsel's failure to expand the record to include

such a claim did not prejudice petitioner.

Petitioner also argues that appellate counsel's failure to remove the appeal from the accelerated calendar limited counsel's ability to argue the assignments of error on appeal and to file a reply brief in support of the appeal. (Doc. 12, Exh. 19).[6] Yet, petitioner fails to show how any such limitations hampered counsel's ability to present petitioner's claims. Nor has petitioner demonstrated that the limitation was responsible for eliminating a winning issue or compromised counsel's ability to argue his claims fully. As appellate counsel explained to petitioner, any need to respond to the state's brief "can be addressed at oral argument." (Doc. 12, Exh. 19, attached letter of May 25, 2007). Petitioner's conclusory assertions of prejudice are insufficient to establish a reasonable probability that the result of his direct appeal proceeding would have been different but for his appellate counsel's alleged failure. *Strickland*, 466 U.S. at 694. Accordingly, Ground Six of the petition is without merit and should be denied.[7]

## VI. PART ONE OF GROUND FOUR OF THE PETITION IS NOT COGNIZABLE IN FEDERAL HABEAS CORPUS; PART TWO OF GROUND FOUR IS PROCEDURALLY DEFAULTED AND WAIVED.

Ground Four of the petition alleges that petitioner's convictions for possession and trafficking in cocaine are against the manifest weight of the evidence and violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

---

[6]The Court notes that petitioner's appeal was in fact removed from the accelerated calendar at some point by the Ohio Court of Appeals. (Doc. 12, Exh. 12 at 1).

[7]To the extent petitioner also argues the Ohio Court of Appeals erroneously denied his Rule 26(B) motion to reopen his direct appeal (Doc. 1 at 30-33), this claim is not cognizable on federal habeas corpus review because a Rule 26(B) motion challenges the correctness of a state post-conviction proceeding and not the conviction itself. *See Calhoun v. Jackson*, No. 1:06-cv-782, 2007 WL 2782745, at *6 (S.D. Ohio Sept. 24, 2007) (citing *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) ( en banc ); *Adkins v. Konteh*, 2007 WL 461292, *4 (N.D. Ohio 2007)).

Part one of Ground Four of the petition is not cognizable in this habeas corpus proceeding. A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence claim, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.), *cert. denied,* 464 U.S. 962 (1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida,* 457 U.S.

31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Part two of Ground Four alleges that petitioner's convictions are not supported by sufficient evidence in violation of the Due Process Clause of the Fourteenth Amendment. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). This claim is procedurally defaulted and waived for purposes of habeas corpus review because petitioner failed to fairly present this particular claim to the Ohio courts.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts.

*McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001);

*Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This means the petitioner must present his

claims to the state courts as federal constitutional issues and not merely as issues arising under state

law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see*

*also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

In the instant action, petitioner failed to fairly present to the state courts his sufficiency of

the evidence claim. Petitioner, through his appellate counsel, failed to raise this particular claim on

direct appeal to the Ohio Court of Appeals and argued only that the verdict was against the manifest

weight of the evidence. (Doc. 12, Exh. 10 at 13-14). Petitioner is now barred from raising this

claim in the Ohio courts because he had the opportunity to present the claim on direct appeal but did

not, thereby waiving such issue under state procedural law.[8] *See Lordi v. Ishee,* 384 F.3d at 194,

citing *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell,* 274 F.3d at 349. This is an

adequate and independent state ground which forecloses this Court's review of the federal

constitutional claim therein in the absence of a showing of cause and prejudice. *Id.*

Petitioner has failed to demonstrate either cause for the procedural default of his sufficiency

of the evidence claim or actual prejudice resulting from the alleged constitutional violation.

Moreover, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his

procedurally-defaulted claim for relief is not addressed on the merits by this Court. Therefore,

petitioner has waived the sufficiency of the evidence claim associated with Ground Four, part two

---

[8]"Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry,* 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 106 (1967)(syllabus).

of the petition for purposes of federal habeas corpus review.

## VII. THE SPEEDY TRIAL CLAIM ALLEGED IN GROUND FIVE OF THE PETITION IS WITHOUT MERIT.

Ground Five of the petition asserts that petitioner's constitutional right to a speedy trial was violated when defense counsel waived petitioner's statutory right to a speedy trial under Ohio Rev. Code Sec. 2945.71 without giving notice to petitioner.[9]

As the only state court to issue a reasoned decision addressing the merits of this claim, the Ohio Court of Appeals made the following findings of fact and ruled in relevant part as follows:

{¶ 25} In his eighth assignment of error, Matthews contends that he was denied his right to a speedy trial. He argues that the state failed to try him within the time period set forth in R.C. 2945.71. This assignment of error is not well taken.

{¶ 26} We first note that the state argues that Matthews has waived the issue because he failed to raise it below. But the Ohio Supreme Court and this court have held that the state has a mandatory duty to comply with the speedy-trial statutes. The accused's failure to object to a trial date outside the applicable time limit does not amount to acquiescence in that date and does not extend the time within which the state must try the accused.

{¶ 27} The state must try a person charged with a felony within 270 days of his or her arrest. For computing time, each day during which the accused is held in jail in lieu of bail counts as three days.

{¶ 28} Extensions of the time period within which the state must try the accused are permissible only for the reasons expressed in R.C. 2945.72. R.C. 2945.72(H) states that "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted upon other than the accused's own motion" can extend the time within which the state must bring the accused to trial.

---

[9]As noted above in connection with petitioner's ineffective assistance of trial counsel claim, petitioner was bound by the waivers executed by counsel even if they were made without his consent. *See State v. Taylor*, 98 Ohio St.3d 27, 32, 781 N.E.2d 72, 78 (2002) (citing *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593, syllabus (1978)).

The state bears the burden to show that actions or events chargeable to the defendant have tolled enough time so that the defendant has been tried within the speedy-trial period.

{¶ 29} Since the triple-count provision applied in this case, the state had 90 days to bring Matthews to trial. Matthews was arrested on March 15, 2006. Due to a series of continuances at his request, the time was tolled from April 10, 2006, until June 20, 2006. His trial began on July 5, 2006. Consequently, only 42 days were attributable to the state, and Matthews was tried within the speedy-trial period.

{¶ 30} Matthews contends that because he did not sign any of the entries granting continuances and did not agree to the continuances, he could not have knowingly and voluntarily waived his speedy-trial rights. But counsel may waive a defendant's right to be brought to trial within the speedy-trial period, and the waiver binds the defendant even if it was executed without the defendant's consent.

{¶ 31} Matthews also argues that the judgment entries granting the continuances were not valid because they did not state the reason for the continuances. But this court has held that reasons are only required when the court acts sua sponte. It need not state a reason when the defendant requests the continuance. We have stated, "When the defendant's request for a continuance is in the record, the absence of an explanation for the continuance in a journal entry should not allow a defendant to use the speedy-trial statute as a sword rather than the shield it was designed to be." Consequently, we overrule Matthews's eighth assignment of error.

(Doc. 12, Exh. 12 at 10-11) (footnotes omitted).

The Ohio Court of Appeals' decision was based entirely on state statutory requirements and considerations. This Court must defer to and is bound by the state court's ruling that Ohio's speedy trial statute was not violated in this case. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state

34

court's determination of state law) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 690-91 (1975)), *cert. denied,* 510 U.S. 1073 (1994). Moreover, a violation of the state speedy trial statute does not present a constitutional claim. *See Hutchison v. Marshall,* 744 F.2d 44, 45-47 (6th Cir. 1984), *cert. denied ,* 469 U.S. 1221 (1985); *see also Norris v. Schotten,* 146 F.3d 314, 329 (6th Cir.1998), *cert. denied,* 525 U.S. 935 (1998). Thus, to the extent that petitioner alleges a violation of the Ohio Speedy Trial Act, his claim raises an issue of state law only that is not cognizable in this federal habeas corpus proceeding. 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984). This Court may review petitioner's claim only to the extent he contends he was denied his right to a speedy trial guaranteed by the Sixth Amendment of the United States Constitution.

As discussed above, the deferential standard of review set forth in 28 U.S.C. § 2254(d) must be applied on federal habeas corpus review of constitutional claims that have been adjudicated by the state courts. However, by its terms, this provision only applies to claims that were "adjudicated on the merits in State court proceedings." *Clinkscale v. Carter,* 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall,* 340 F.3d 433, 436 (6th Cir. 2003)), *cert. denied,* 125 S.Ct. 1316 (2005). In cases such as this, where the state court analyzed the claim solely in terms of state law and failed to take into consideration the federal constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the deferential standard of review set forth in § 2254(d). *See Wiggins,* 539 U.S. at 536; *Clinkscale,* 375 F.3d at 436.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This constitutionally-guaranteed right to a speedy trial is considered "fundamental" and is applicable to state criminal proceedings through the Fourteenth

Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 226 (1967); *Cain v. Smith,* 686 F.2d 374, 380 (6th Cir. 1982).

The Supreme Court has stated that the Sixth Amendment's speedy trial guarantee is "an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *United States v. Marion,* 404 U.S. 307, 320 (1971). Its protections are triggered by either the issuance of "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Id.* They do not extend to the period prior to the issuance of the formal charge or arrest. *Id.* at 321-22 & n.13.

"On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." *Doggett v. United States,* 505 U.S. 647, 651 (1992). However, the Supreme Court has recognized the constitutional right to a speedy trial permits some delays; is "necessarily relative" depending on the circumstances of each case; and cannot "be quantified into a specified number of days or months." *Barker v. Wingo,* 407 U.S. 514, 521-23 (1972).

In *Barker,* the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial. *Id.* at 530; *see also Marion,* 404 U.S. at 320-21; *Cain,* 686 F.2d at 381 (and Supreme Court cases cited therein). The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a

36

speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Doggett*, 505 U.S. at 651.

"[T]o trigger a speedy trial analysis" under this four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651-52; *Barker*, 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. at 652). While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652, n. 1; *Maples*, 427 F.3d at 1026, those of a lesser duration are not per se excessive. *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial). *See also United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not per se excessive); *Wilcher v. Rose*, 85 F.3d 630 (6th Cir. 1996) (unpublished), 1996 WL 262951, *1 (ten and one half months not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight month delay between charge and trial not presumptively prejudicial).

In this case, petitioner was arrested on March 15, 2006. The time was tolled from April 10, 2006 until June 20, 2006 at petitioner's request. Petitioner's trial began on July 5, 2006. In determining the length of the delay, only the periods of delay attributable to the government or court are counted. *See U.S. v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (citing *Barker*, 407 U.S. at 529; *White*, 985 F.2d at 275). Even ignoring the periods of delay attributable to petitioner, petitioner was brought to trial within three and one-half months of his arrest. A delay of three and one-half months

37

is not presumptively prejudicial. *See Cotten v. Marshall*, 791 F.2d 931 (table), 1986 WL 16893, at

*2 (6th Cir. April 17, 1986) ("The length of the delay in this case, approximately three and one-half

months, is too minimal to 'trigger' inquiry into the other factors."). *See also White*, 985 F.2d at 275

(six-and-one-half month delay not presumptively prejudicial); *Howard*, 218 F.3d at 564 (delay of

five months not per se excessive). Accordingly, petitioner's Sixth Amendment speedy trial claim

necessarily fails and Ground Five of the petition should be denied.

## IT IS THEREFORE RECOMMENDED:

1. Ground One of the petition for writ of habeas corpus should be denied with prejudice. However, a certificate of appealability should issue with respect to Ground One of the petition because reasonable jurists would find it debatable whether that claim should have been resolved in a different manner or, alternatively, whether the issue presented is "adequate to deserve encouragement to proceed further." *Miller v. El-Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

2. Ground Four, part two of the petition should be denied as procedurally defaulted and waived. A certificate of appealability should not issue with respect to Ground Four, part two of the petition which this Court has concluded is waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[10]

3. Grounds Two through Six of the petition should be denied with prejudice. A certificate of appealability should not issue with respect to the claims alleged in Grounds Two through Six of the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and, therefore, should **GRANT**

---

[10] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 11/25/09

Timothy S. Hogan
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KENDRIC MATTHEWS,
    Petitioner,

    vs.

WARDEN MICHAEL SHEETS,
    Respondent

Civil Action No. 1:08-cv-742

Beckwith, J.
Hogan, M.J.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation **within 15 days** after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within 10 days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by ( Printed Name) C. Date of Delivery |
| 1. Article Addressed to:<br><br>Kendric Matthews<br>529-054<br>Ross Corr. Institution<br>PO Box 7010<br>Chillicothe, OH 45601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 3150 0000 8388 4414 |

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:08cv742 (Doc. 16)