UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


Kendric Matthews,                    :    Case No. 1:08-cv-742
                                     :
        Petitioner,                  :
                                     :
vs.                                  :
                                     :
Warden Michael Sheets,               :
                                     :
        Respondent.                  :

**ORDER**

Before the Court are Petitioner's objections to the Report
and Recommendation of the Magistrate Judge.  (Doc. 19)  In a
thorough and well-reasoned report, the Magistrate Judge
recommended that Petitioner's habeas corpus claims should be
denied.  (Doc. 16)  Petitioner objects to those recommendations
on several grounds.

For the reasons discussed below, the Court overrules
Petitioner's objections.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case, as found by the Ohio Court of
Appeals and established by the record, are that Petitioner
Kendric Matthews was arrested by Cincinnati police officers on
March 15, 2006.  The officers had obtained a warrant to search an
apartment rented by Crystal Hart.  The warrant was obtained based
upon information from a confidential informant that Matthews and

Hart were selling illegal drugs from the apartment. When the officers entered the apartment, Officer Mercado saw Matthews run from the kitchen toward a bedroom, holding a plastic baggie in one hand, and what was discovered to be a remote control in the other. When Matthews refused the officers' commands to stop, the officers forced him to the ground. The officers then discovered a baggie of crack cocaine underneath him, which contained close to 21 grams. In the subsequent search of the apartment, the officers found Matthews's state ID card, powder cocaine and marijuana, a digital scale, and cash in the pockets of pants found in the living room. Hart admitted that the powder cocaine, marijuana and some of the cash were hers.

Matthews was indicted on two counts for trafficking in cocaine, and two counts for possession of cocaine under Ohio statutes. One count of trafficking was dismissed before trial, and the trial court granted dismissal of the fourth count (possession of cocaine) at the close of the state's case. A jury convicted him on the remaining two counts, and the trial court sentenced him to a total term of fourteen years imprisonment. On his direct appeal, the Ohio Court of Appeals rejected all of his assignments of error save for two pertaining to his sentence. Matthews' case was then remanded to the trial court for re-sentencing. That decision was affirmed by the Ohio Supreme Court, and Matthews' pro se appeal to that court was rejected as

not involving any substantial constitutional question. Matthews' post-conviction motions and appeals were also unsuccessful. (He was eventually re-sentenced by the trial court, and his appeal from that sentence was unsuccessful.)

Matthews now alleges six grounds for relief in his habeas petition in this Court. Ground One contends that Matthews' Confrontation Clause rights were violated by the trial court's admission of several police officers' hearsay testimony. Ground Two alleges prosecutorial misconduct based on a failure to disclose a statement Matthews made to police at the time of his arrest. Ground Three alleges that his trial counsel's representation was constitutionally deficient in several respects.

Ground Four contends that his convictions are against the manifest weight of the evidence, and violate his federal due process rights. Ground Five alleges his right to a speedy trial was violated. Ground Six contends that he was deprived of the effective assistance of appellate counsel.

## DISCUSSION

Matthews' petition is governed by the requirements of the Antiterrorism and Effective Death Penalty Act. Under the AEDPA, a federal court may not grant habeas corpus relief to a state prisoner unless it concludes that the state court's adjudication of the prisoner's claim:

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. §2254(d). "A state court renders an adjudication

'contrary to' clearly established federal law when it 'arrives at

a conclusion opposite to that reached by [the Supreme] Court on a

question of law' or 'decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable

facts.'" Carter v. Mitchell, 443 F.3d 517, 524 (6th Cir. 2007),

citing Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state

court unreasonably applies clearly established federal law when

it "identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." Id.

In defining the term "objectively unreasonable," the Supreme

Court has stated that "a federal habeas court may not issue the

writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." Williams v. Taylor, 529

U.S. at 411.

Ground One. Matthews asserts that his Confrontation Clause

-4-

rights were violated when the trial court, over Matthews'
objection, permitted police officers to testify that a
confidential informant told the police that Matthews and Hart
were selling drugs from the apartment.  Matthews raised this
issue on direct appeal and the Ohio Court of Appeals rejected it,
finding that the testimony was not admitted for its truth, but as
background information concerning the basis for the search
warrant.  Even if a constitutional violation occurred, the court
alternately concluded that the error was harmless in view of the
other evidence properly admitted that supported the convictions.

The Magistrate Judge concluded that testimony of two of the
police officers did violate Matthews' constitutional rights,
contrary to the conclusion reached by the Ohio court.  The
Magistrate Judge found the officers' testimony about information
received from a confidential informant was hearsay, as it was
offered to show that it was Matthews who was actually selling
drugs at the apartment.  Officer Bode testified that "It was
brought to our attention that both the defendant and the
codefendant ... were involved in selling drugs out of a location
on Hawthorne Avenue.  (Doc. 12, Trial Trans. 198.)  Officer Hall
testified that he was investigating a complaint that a "female by
the name of Crystal" and "this defendant here [Matthews], were
involved in drug transactions."  (Id. at 210-211.)  The trial
court overruled Matthews' objections to both officers' testimony.

Statements of a confidential informant to a police officer
are considered to be "testimonial" for purposes of Confrontation
Clause analysis; see <u>United States v. Cromer</u>, 389 F.3d 662, 670–
671 (6th Cir. 2004).  Therefore, the only remaining issue is
whether the officers' testimony was offered for some purpose
other than the truth of what the informant told the police, that
Matthews had been dealing drugs.  In contrast to Officer Bemmes,
who testified only that a "complaint" on the address led to the
search warrant (Doc. 12, Trial Trans. 176), Officers Bode and
Hall specifically testified to the jury that the unidentified
informant told police that Matthews was selling drugs at the
apartment.  The Magistrate Judge also noted the prosecutor's
closing argument, which urged the jury to consider "why" the
police officers broke down the apartment door and entered the
apartment:  "... they told you it was because Kendric Matthews
was selling crack out of that residence, that their investigation
led them to have that information."  (Doc. 16 at p. 13, quoting
from Doc. 12, Trial Trans. 307-308.)

This Court agrees with the Magistrate Judge's conclusion
that the testimony of Officers Bode and Hall violated the
Confrontation Clause.  In <u>Crawford v. Washington</u>, 541 U.S. 36
(2004), the Supreme Court abrogated its prior Confrontation
Clause jurisprudence and found that an out-of-court testimonial
statement offered to establish the truth of the matter asserted

is inadmissible when the defendant has had no opportunity to cross-examine that witness. The testimony of Officer Bode and Officer Hall, clearly linking Matthews to the out-of-court, untested statement by the unidentified confidential informant, was not simply background information concerning the search warrant. The prosecutor's closing argument makes that clear, by urging the jury to specifically consider the truth of the statements as related by the police officers. In this Court's opinion, the Ohio Court of Appeals decision that no constitutional violation occurred was contrary to clearly established federal law as articulated in Crawford v. Washington.

However, Confrontation Clause violations are without doubt subject to harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Vasquez v. Jones, 496 F.3d 564, 574 (6th Cir. 2007), finding that a confrontation clause violation had a "substantial and injurious effect or influence in determining the jury's verdict," and thus was not harmless. There, the court observed that the witness in question was critical to the case, as the other witnesses had been equivocal in linking defendant to the murder. In addition, no physical evidence linked defendant to the murder weapon, so defendant's inability to impeach the absent witness was especially crucial to his defense.

Here, in contrast, the information from the confidential

informant was no doubt critical to procurement of the search warrant, but it was not necessarily critical to the state's case. The testimony and the evidence presented concerning the chain of events **after** the officers entered the apartment pursuant to the search warrant were very strong. Matthews immediately ran from the officers as they entered, and Officer Mercado saw a plastic baggie in his hand as he ran. After the officers subdued Matthews and lifted him up from the floor, a crumpled bag containing crack was found where he had been lying. The amount in the bag was consistent with resale, not simply for personal use. As the Magistrate Judge aptly noted, Matthews was "literally caught holding the bag" when the officers entered the apartment. (Doc. 16 at p. 16.)

Matthews objects to this conclusion, repeating his assertion that the "only" evidence supporting the trafficking conviction is the officers' testimony about the confidential informant. He claims that the state was required to offer evidence of sales being made from the address, or to present some physical evidence that he was legally domiciled at the apartment, in order to support his conviction. He recognizes that the quantity of crack found (21 grams) was worth $500, but argues that it would require a "great leap of logic" to conclude that this amount was for resale and not for personal use. However, Matthews ignores the police officers uniform testimony that the amount of crack found

was fully consistent with resale.  Matthews also ignores the discovery of the digital scale and the quantities of cash in the apartment, common hallmarks of drug trade.  Moreover, he cites no authority suggesting that the state was required to prove that he was legally domiciled at that apartment in order to sustain his convictions.

In view of the totality of the evidence properly admitted at trial, this Court must conclude that the error in admitting the two officers' hearsay testimony did not have a substantial and injurious effect on the jury or on the outcome of the trial. Therefore, the Court denies Ground One of the petition.  As recommended by the Magistrate Judge, the Court will grant a certificate of appealability on this issue.

Ground Two.  Matthews alleges that the state improperly withheld a statement he made to the police shortly after his arrest.  Officer Hall testified that Matthews' Ohio ID card was found during the search of the apartment, on a shelf above the kitchen sink.  The prosecutor then asked him if Matthews attempted "... to remove anything or have somebody else remove anything from that apartment" after his arrest.  Officer Hall responded that there were two puppies in a cage in the kitchen, and that Matthews was concerned about having someone care for the dogs.  Matthews immediately objected to this testimony, and in a sidebar conference told the trial court that the state had not

produced this statement before trial.  The prosecutor responded that she did not view the statement as one against Matthews' interest, and that in any event she had just learned about it the day before in preparing Officer Hall for trial.  The trial court denied Matthews' request for a mistrial, but instructed the jury that they must disregard Officer Hall's response, and the questions and answer were stricken from the record.  (Doc. 12, Trial Trans. 216-221.)

The Ohio Court of Appeals agreed that the statement should have been disclosed pursuant to Ohio Crim. Rule 16(B), requiring disclosure of defendant's oral statements to the police.  But the court found that Matthews was not unduly prejudiced by the failure to disclose the statement, and that the jury must be presumed to have followed the trial court's instruction to disregard Officer Hall's testimony.  The court also rejected Matthews' prosecutorial misconduct claim, finding that the failure to disclose the statement did not deprive Matthews of a fair trial nor prejudicially affect his substantial rights.

Matthews argues that the admission of Hall's testimony destroyed his defense to the charges, which was that he had no connection to that apartment other than being there the night in question.  He argues that the state was required to disclose his statement to the officers in pre-trial discovery, and its failure to do so was prosecutorial misconduct that violated his Due

Process rights. He also suggests that if the statement had been timely disclosed, he could have filed a motion to suppress, or that he might have accepted a plea offer (for a sentence substantially less than what he eventually received).

The Magistrate Judge correctly notes that Matthews' claim, to the extent it is premised upon a violation of Ohio's criminal rules governing pre-trial discovery, is not cognizable in this habeas proceeding. There is no general federal constitutional right to pre-trial discovery that could give rise to a habeas claim. The Due Process clause does not require the state to disclose "all" of its evidence as Matthews suggests, but does require disclosure of evidence favorable to the accused pursuant to Brady v. Maryland, 373 U.S. 83 (1963). As the Magistrate Judge observed, Matthews' statements about the dogs being cared for was inculpatory (or an admission against interest, as the trial court stated), as it tended to tie him to the apartment. Moreover, Matthews must have known that he voiced concerns about the dogs to the officers, and could have informed his own lawyer before Officer Hall took the stand.

Matthews also fails to establish any basis to suggest that a motion to suppress the statement would have had merit. His statement (as described by Officer Hall) appeared to be more of a spontaneous expression of concern for the dogs, and was not made while being interrogated by the officers. More importantly, the

trial court **excluded** the statement and ordered the jury to disregard Officer Hall's testimony. The statement could not been used by the state to prove its case.

In Matthews' objections to these conclusions, he argues that the Magistrate Judge misinterpreted <u>Brady</u>, or that <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64 (1938) requires this Court to enforce Ohio's pretrial discovery rules. The <u>Erie</u> doctrine is irrelevant to this issue, and the Magistrate Judge properly applied <u>Brady</u>. Moreover, even if the statement might be considered to fall within <u>Brady</u>'s scope, Matthews has not demonstrated that Officer Hall's testimony deprived him of a fair trial. See, e.g., <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995): "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Given the trial court's exclusion of the testimony regarding Matthews' statement, this Court finds that Matthews received a fair trial.

The Magistrate Judge also rejected Matthews' prosecutorial misconduct claim. In order to succeed, such a claim must involve misconduct that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). The statement about the dogs was not "devastating" to Matthews' defense; Matthews never

argued that he had never been in the apartment before the night in question. And given the trial court's exclusion of Officer Hall's testimony, Matthews' trial was not "infected with unfairness" that amounted to a due process violation. Matthews' suggestions that he "might" have altered his trial strategy, or that he "might" have accepted a plea offer, are simply speculative. Matthews argues that he rejected the plea because he "honestly believed that there was no direct evidence linking him to the apartment." (Doc. 15 at p. 7) Whether or not Matthews "honestly" believed in his defense, Officer Hall's brief testimony did not deprive him of a fair trial given the other substantial evidence that was properly admitted.

Matthews' Second Ground for Relief is therefore denied.

Ground Three. Matthews contends that he received ineffective assistance of trial counsel, raising seven alleged errors committed by his lawyer. He argues that his counsel failed to challenge the validity of the search warrant; failed to meet with him and lacked interest in his case; failed to review Officer Hall's grand jury testimony; failed to call Crystal Hart as a witness; waived Matthews' speedy trial rights without his consent; withdrew certain pretrial motions; and failed to object to Matthews' appearance in prison garb at his jury trial.

Matthews raised all but the last contention during his direct appeal. The Ohio Court of Appeals rejected Matthews'

claims, finding that under <u>Strickland v. Washington</u>, 466 U.S. 668
(1984), his trial counsel was not deficient in his
representation.  The court observed that its "... review of the
record shows that Matthews' counsel put on a thorough and well-
planned defense.  A defendant is not deprived of the effective
assistance of counsel when counsel chooses, for strategic
reasons, not to pursue every possible trial tactic." (Doc. 12,
Exhibit 12 at 8.)  The Magistrate Judge also concluded that each
of Matthews' ineffective assistance claims lack merit.

Ineffective assistance of counsel claims are governed by the
standards articulated in <u>Strickland v. Washington</u>, 466 U.S. 668
(1984).  Matthews must first show that his lawyer made a
fundamental or serious error.  He must then demonstrate that
those errors actually prejudiced his defense, and thereby
deprived him of a fair trial.    <u>Id</u>. at 687.  To demonstrate the
required prejudice, Matthews must show a reasonable probability
that the result of his trial would have been different.   "A
reasonable probability is a probability sufficient to undermine
confidence in the outcome."   <u>Id</u>. at 694.

Several of Matthews' contentions are wholly unsupported by
any facts or law demonstrating that the purported failures of his
lawyer caused him any prejudice.  He does not provide any basis
upon which the Court could find that a motion to suppress the
search warrant might have been successful, or how additional time

-14-

spent with his lawyer could have avoided a guilty verdict.
Matthews has not shown what Officer Hall's grand jury testimony
may have been, or how it might have been used during the trial.
In fact, before Officer Hall testified, Matthews' lawyer
requested the trial court to review Hall's grand jury testimony
in camera.  The trial court denied that request because Matthews'
failed to make a particularized showing of need, as is required
by Ohio law.  The trial court noted that the suggestion that
Officer Hall might "lie" was not enough.  (Doc. 12, Trial Trans.
148-154.)  Matthews' current argument that there "might" have
been something helpful in the grand jury testimony is similarly
insufficient here.

Matthews contends that his counsel withdrew certain pre-
trial motions, but he does not explain what those motions may
have been, or why he believes those motions would have been
successful or changed the result of his trial.

Regarding the failure to call Crystal Hart as a witness, the
trial transcript establishes that Ms. Hart was called as a
witness for the defense, that she was questioned by Matthews'
counsel and by the court, and that she refused to testify on the
advice of her counsel.  (Doc. 12, Trial Trans. 270-275.)  After
her refusal to testify, Matthews' counsel proffered what he
expected her testimony would have established.

Matthews next complains that his lawyer waived his right to

a speedy trial without his consent.  The Ohio Court of Appeals found that Matthews' consent was not required under Ohio law, and that he was bound by his counsel's waiver.  Matthews does not establish that he was actually prejudiced by any of these waivers.

Matthews finally contends that his trial counsel did not object to his appearance before the jury in prison garb.  This claim was not included in Matthews' direct appeal, and it is procedurally defaulted unless Matthews can demonstrate cause and actual prejudice, or a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Even if he could adequately establish cause (by arguing ineffective assistance of appellate counsel, discussed below in Ground Six), the record fails to establish that Matthews was actually prejudiced by his appearance.  There is no reference in the record to Matthews' appearance, and Matthews does not provide a description of his garb.  While it is certainly true that the state cannot **compel** a defendant to appear before the jury in such garb, a defendant's failure to raise an objection to the trial court, which is in the position to remedy that situation, negates any suggestion of state compulsion necessary to show a constitutional violation. See Estelle v. Williams, 425 U.S. 501, 512 (1976).  Matthews did not object to his clothing at the start of his trial, before the jury entered the courtroom, nor at any later time that appears in

the transcript.  Matthews has not established that his appearance violated his constitutional rights.

Matthews' ineffective assistance of counsel claims are therefore overruled.

<u>Ground Four</u>: In this ground for relief, Matthews argues that his convictions for possession and trafficking are against the manifest weight of the evidence, and violate his due process rights.  Matthews' manifest weight of the evidence claim is not cognizable in this habeas proceeding.  Such a claim is based on state law, and under 28 U.S.C. §2254(a) does not entitle Matthews to relief from this Court.

With regard to his federal claim, the Due Process clause requires that a defendant be convicted upon evidence that permits a rational trier of fact to find that the state has proven each element of the offense beyond a reasonable doubt.  See <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979); <u>Johnson v. Coyle</u>, 200 F.3d 987, 991 (6th Cir. 2000).  In order to preserve this claim, however, Matthews must establish that he first presented it to the state courts.  In his seventh assignment of error in his direct appeal, Matthews argued that his convictions were contrary to the manifest weight of the evidence.  (Doc. 12, Appellate Brief at 13-14.)  The Ohio Court of Appeals rejected this claim, as the court could not find "... that the jury clearly lost its way and created such a manifest miscarriage of justice that we

must reverse Matthews' convictions and order a new trial." (Doc. 12, Court of Appeals decision at ¶24.)   Matthews' appeal and the court's decision plainly address the state law issue of manifest weight of the evidence; Matthews did not present a federal due process claim to the Ohio court.   As he did not fairly present this claim, he waived the issue under Ohio's res judicata doctrine, pursuant to <u>State v. Perry</u>, 10 Ohio St.2d 175, 176 (1967).   That doctrine is an adequate and independent state ground which prevents this Court from reviewing his claim in a habeas proceeding.   See, e.g., <u>Coleman v. Mitchell</u>, 268 F.3d 417, 427 (6th Cir. 2001).

Matthews has not demonstrated cause for this default, or more importantly that he was actually prejudiced by the failure to present this claim to the Ohio court.   As noted above, the evidence seized from the apartment and the properly-admitted testimony of the police officers undoubtedly provide a constitutionally adequate basis for Matthews' convictions.   That is, a rational trier of fact could find that Matthews was guilty of both offenses beyond a reasonable doubt.   This Ground for Relief is therefore overruled.

<u>Ground Five</u>.   Matthews contends that his right to a speedy trial was violated because his lawyer waived his rights without his express consent.   He presented this substantive claim to the Ohio Court of Appeals which rejected it, noting that a

defendant's express consent is not required and counsel's waiver binds a defendant. The court also rejected his argument that the continuances requested by his lawyer were not valid because the court failed to note a reason for granting them.

To the extent that Matthews' fifth ground for relief raises a claim under Ohio law, it is not cognizable here. Matthews' argument that his federal Sixth Amendment right to a speedy trial was violated is reviewed under standards articulated by the Supreme Court in <u>Barker v. Wingo</u>, 407 U.S. 514, 521-23 (1972). The Court should consider the length of the delay, the reason for the delay, whether defendant asserted his right to a speedy trial, and whether defendant was prejudiced by any delay. The length of the delay is the key factor in this analysis, as an inordinate delay raises a presumption of prejudice. Here, not quite four months elapsed between Matthews' **arrest** on March 15, 2006 and the start of his trial on July 6, 2006. A delay of less than four months is not presumptively prejudicial. See, e.g., <u>United States v. White</u>, 985 F.2d 271, 275 (6th Cir. 1993), finding a six and a half month delay before trial was not per se excessive.

As the Magistrate Judge noted, if the Court finds that the length of the delay is not presumptively prejudicial or uncommonly long, the judicial inquiry ends. <u>Maples v. Stegall</u>, 427 F.3d 1020, 1025-26 (6th Cir. 2005), quoting <u>Doggett v. United</u>

States, 505 U.S. 647, 652 (1992). In Maples, defendant's trial was repeatedly postponed, largely without explanation from the trial court, resulting in a 25-month delay between his arrest and the date of trial. Here, in contrast, the almost four-month delay in this case was not uncommonly long, and was not presumptively prejudicial to Matthews. For that reason, his constitutional right to a speedy trial was not violated. Ground Five is therefore overruled.

Ground Six: Matthews contends in his final claim that he received ineffective assistance of appellate counsel. He contends that appellate counsel failed to appeal his appearance in prison clothing and failed to expand the record on his direct appeal to support this claim. He also contends his lawyer failed to seek removal of his direct appeal from the accelerated calendar of the Ohio Court of Appeals.

This Court already concluded that Matthews has not demonstrated a constitutional violation nor any actual prejudice that resulted from his appearance at trial in prison clothing. His claim that ineffective assistance of appellate counsel caused the procedural default of this claim is therefore irrelevant, as he must establish both cause and actual prejudice to be entitled to relief under Strickland v. Washington.

With regard to his arguments regarding expansion of the appellate record and removing his appeal from the accelerated

-20-

calendar, Matthews fails to identify any evidence he believes should have been included in the record, or to demonstrate that the accelerated calendar placement affected his substantive appeal rights.  The Ohio Court of Appeals thoroughly addressed each of his assignments of error, and granted him relief on two of those assignments by remanding for re-sentencing.  Even if appellate counsel erred in some fashion, any such error did not result in actual prejudice to Matthews' appeal.  His Sixth Ground for relief is therefore overruled.

## CONCLUSION

For all of the foregoing reasons, the Court denies the petition for a writ of habeas corpus.

The Court finds that a certificate of appealability should issue with respect to Ground One of Matthews' petition, because reasonable jurists would find it debatable whether his Confrontation Clause claim should be resolved in a different fashion, and whether the issue he presents is adequate for further proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

A certificate of appealability should not issue with respect to Grounds Two, Three, Four, Five and Six, as Matthews had not made a substantial showing of a constitutional violation.

The Court certifies, pursuant to 28 U.S.C. §1915(a)(3) that an appeal of this Order would be taken in good faith, and grants

Matthews leave to proceed on appeal in forma pauperis upon a showing of financial necessity. See <u>Kincade v. Sparkman</u>, 117 F.3d 949, 952 (6th Cir. 1997).

SO ORDERED.

THIS CASE IS CLOSED.

DATED: February 11, 2010 <u>s/Sandra S. Beckwith</u>
Sandra S. Beckwith
Senior United States District Judge